# BALTIMORE CITY COURT.

Filed November 10, 1919.

MORRIS SILVERSTEIN
VS.
NATHAN GROSS.

*Louis M. Silberstein* for plaintiff.
*Bernhard Cline* for defendant.

DUFFY, J.—

The defendant testified that he never authorized plaintiff to sell the property, but he did express a willingness to sell to the plaintiff himself at cost price (pp. 85-87). He admits sending and receiving the telegrams. He stated that by phone plaintiff told him the purchaser was the S. & G. Realty Company and the price $45,000, and his telegram of July 10th shows that he knew there was some connection between plaintiff and this company. He denies that he was informed that the purchasers were Frenny & Voloshen. Pursuant to the telegram of July 10th he came to Baltimore, went to plaintiff's office, got Habelson to phone to plaintiff's wife to tell her husband to meet him at plaintiff's office at 8 P. M. that evening, and then left the plaintiff's office. He did not return to keep the appointment at 8 P. M., but left Baltimore without seeing the plaintiff, and did not communicate with him again.

Although he denies authorizing the plaintiff to sell the property, he states that when plaintiff informed him by phone that he could sell it to the S. & G. Realty Company for $45,000, he replied he would come to Baltimore, and he did come (p. 79). When he arrived at plaintiff's office he saw the sign S. & G. Co. on the door, and, after making an appointment to meet plaintiff at 8 P. M., he left, as he explains (p. 83), because he did not want anything to do with plaintiff.

By thus avoiding a meeting with the plaintiff, and by failing to communicate with him on his return to Harrisburg, he prevented the plaintiff from communicating to him the terms of the sale of July 1st and the names of the purchasers, and delivering the $100 check. It thus appears that as a direct result of the defendant's conduct, the purchasers abandoned the sale of July 1, and defendant remained in ignorance of the terms of the contract and the names of the purchasers. As these facts appear from defendant's own testimony he can not ignore them in framing his prayers, and this is what was done. A prayer concluding with the right of either party to a verdict must submit the whole case. Not only must the theory of the prayer be correct and supported by proof, but the conclusions must be correct notwithstanding the truth of all other facts in evidence and all inferences properly deductible therefrom. Thomas on Prayers, 40.

Furthermore, his prayers are framed on the assumption that the *sale* was made in November. This is erroneous. The *sale* out of which the plaintiff's claim arose was consummated on July 1st, and if this sale was authorized by defendant or affirmed by him after it was made, the plaintiff's claim was established.

The sale of July 1st is established by uncontradicted proof, and was a valid and enforceable contract, if plaintiff was authorized to make it, or his action in making it was subsequently ratified.

Another error of defendant's prayers is, that they assume because Katz was the procuring cause of the sale in November, which resulted in a transfer, and because Katz was paid a commission for making that sale, that the plaintiff has no valid claim; whereas the plaintiff has a right of action if the jury believe that the sale of July 1st was authorized by defendant or ratified by him. He could not repudiate this sale and thus avoid payment of commissions to plaintiff for procuring it.

The prayers of both parties appear from their phraseology to have been taken from the instructions granted in other cases. With exception of defendant's first prayer, which was granted, they all have no relation, or insufficient relation, to the facts of the case.

This is not the case of a sale made and finally consummated by a transfer, and the question to be litigated is, which one of two brokers was the procuring cause. It is a case where two separate and distinct contracts were made to sell this property to Frenny & Voloshen, but the first one was either repudiated or avoided by defendant. It was with this theory of the case in mind that the plaintiff's prayer was modified, and then granted by the court.

Motion for new trial overruled.